[Cite as *State v. Turner*, 2014-Ohio-4460.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 27210 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JAY E. TURNER | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 13 07 1924 |

DECISION AND JOURNAL ENTRY

Dated: October 8, 2014

WHITMORE, Judge.

{¶1} Appellant, Jay Turner, appeals from his conviction in the Summit County Court of Common Pleas. This Court affirms in part, reverses in part, and remands for resentencing.

I

{¶2} On June 4, 2013, Larry Hern's credit card disappeared from the Winking Lizard Tavern ("Winking Lizard"). Michelle Mondozzi, a server at the Winking Lizard, had swiped the card for payment but then could not locate it despite searching the restaurant. The Winking Lizard has a policy that, if an employee finds a credit card, it must be turned in to the manager's office.

{¶3} Hern's credit card was not turned in to the office and the assistant manager called Scott Bassett, the general manager of the Winking Lizard. The next day, Bassett reviewed the restaurant's video surveillance tapes. In addition to Mondozzi, the videos show Turner, who

had been working as a dishwasher, and Megan Chapin, who had been training as a server on that date.

{¶4} The video of the kitchen server area shows Turner picking up the credit card and setting it on a counter next to Chapin. Chapin, then, picks up the credit card, looks at it, and sets it back down. Later, Turner comes back and again picks up the credit card. According to Chapin, Turner told her that he was going to turn it in to the manager's office. The video of the front foyer shows the door to the manager's office, but Turner is not seen walking in that direction. Rather, he is seen leaving the building carrying some food.

{¶5} Detective Joseph Krunich from the Copley Police Department investigated the matter. He reviewed the surveillance footage and spoke with employees of the Winking Lizard. He called and spoke with Turner. During that phone conversation, Turner denied picking up the credit card a second time. In a subsequent interview, Turner admitted that he might have taken the credit card when he left because he was carrying out some food that he was not supposed to remove from the establishment.

{¶6} A grand jury indicted Turner for theft of the credit card, in violation of R.C. 2913.02(A)(1), a fifth-degree felony. Following unsuccessful plea negotiations, the matter proceeded to a jury trial and Turner was convicted. The trial court sentenced Turner to 12 months in prison. Turner now appeals and raises three assignments of error for our review. To facilitate the analysis, we rearrange some assignments of error.

## II

### Assignment of Error Number One

THE TRIAL COURT ERRED BY DENYING THE CRIMINAL RULE 29 MOTION BECAUSE THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE TO MEET THE BURDEN OF PRODUCTION.

{¶7}    In his first assignment of error, Turner argues that the trial court should have granted his Crim.R. 29 motion because there was insufficient evidence to convict him of theft. We disagree.

{¶8}    An appellate court reviews the denial of a Crim.R. 29 motion for acquittal under a sufficiency-of-the-evidence standard. *State v. Glunt*, 9th Dist. Medina No. 13CA0050-M, 2014-Ohio-3533, ¶ 5, citing *State v. Slevin*, 9th Dist. Summit No. 25956, 2012-Ohio-2043, ¶ 15. A sufficiency challenge questions whether the state met its burden of production at trial. *Glunt* at ¶ 5. Sufficiency is "that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether a conviction is supported by sufficient evidence is a question of law, which is reviewed de novo. *Id.* "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶9}    Turner was convicted of theft in violation of R.C. 2913.02(A)(1). R.C. 2913.02(A)(1) provides, in pertinent part, "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner * * *." The definition of "deprive" includes: "(1) [to w]ithold property of another permanently * * *; [or] (2) [to d]ispose of property so as to make it unlikely that the owner will recover it * * *." R.C. 2913.01(C). When the property involved is a credit card, a theft offense is a fifth-degree felony "[r]egardless of the value of the property involved." R.C. 2913.71(A).

{¶10} Larry Hern, the owner of the credit card, testified that he gave his credit card to a waitress at the Winking Lizard to pay his bill, but when she returned, she no longer had his credit card. He further testified that he did not know Turner and did not give Turner permission to have his credit card. As soon as he got home that evening, Hern called and canceled his credit card. Hern was unaware of any unauthorized charges on his credit card, but stated that his credit card was never returned to him.

{¶11} Michelle Mondozzi waited on Hern on the night in question. She testified that Hern gave her his credit card to pay his bill. She remembered swiping it for payment but later could not find it. Mondozzi testified that, while she was searching for the credit card, another server told her it had been turned in to the manager's office. Mondozzi went to the manager's office, but the credit card was not there, so she resumed her search. Mondozzi stated that she "looked everywhere for the card," including the kitchen area where she had swiped the credit card, the bar area, underneath tables, and in the trash cans. The credit card, however, was not found.

{¶12} Megan Chapin testified that, at the time of the incident, she was training as a server at the Winking Lizard. She saw Turner pick up the credit card and place it on the server's table. She admitted that she also picked it up and looked at it, but then set it back down. She further testified that Turner came back, picked up the credit card again, and told her that he was going to turn it in to the manager's office. She stated that, when she saw Mondozzi searching for the card, she relayed to her that it had been turned in to the manager.

{¶13} Scott Bassett, the general manager of the Winking Lizard, testified that he was not working on the night in question, but received a telephone call from the assistant manager who was. The following day, Bassett reviewed video surveillance tapes of the restaurant from the

time in question. Copies of the videos showing the kitchen server area, front foyer, and exit were played for the jury.[1] Bassett testified that, in the video, he observed Mondozzi drop the credit card. Then, Turner picked it up and set it down on a table in the kitchen area. Next, Chapin picked up the card, looked at it, and set it back down. Finally, Turner picked up the card a second time and walked out of the kitchen area while holding a box of food in his other hand. Approximately ten seconds later, Turner is seen entering the front foyer and exiting the building. While Bassett conceded that, if Turner set the card down again, it was possible that someone else could have picked it up, "[t]he state is not required to eliminate all possibilities regarding interpretations of the evidence to meet the sufficiency standard." *See State v. Powell*, 8th Dist. Cuyahoga No. 82054, 2003-Ohio-4936, ¶ 15.

{¶14} Bassett further explained that the Winking Lizard has a procedure contained within its employee handbook that, if a credit card is found in the restaurant, it is to be turned in to the manager right away. To his knowledge, Hern's credit card was never turned in to the manager's office. He testified to the location of the door to the manager's office in the video of the front foyer and that Turner is not seen entering or exiting the manager's office.

{¶15} According to Bassett, Turner called him the day after the incident and inquired if he was being fired and, if so, the reason for his termination. During that phone conversation, Bassett asked Turner about the credit card, and Turner denied having it. Bassett also questioned why Turner left without checking out with a manager, as is the standard procedure at the end of the shift. According to Bassett, Turner stated the reason was that he was taking food home against the restaurant's rules for its employees.

---

[1] Still photographs made from these videos were also admitted into evidence.

6

{¶16} Detective Joseph Krunich of the Copley Police Department testified that he investigated the theft. As part of his investigation, he reviewed the surveillance videos and spoke with employees of the Winking Lizard. His initial contact with Turner was by telephone. Krunich recorded that conversation and it was played for the jury. During that conversation, Krunich advised Turner that he had video evidence of Turner picking up the credit card, putting it on the counter, and then coming back, picking it up again and walking out of the restaurant. Turner responded that "[he] came back, but * * * never picked it back up * * * never touched it again."

{¶17} Krunich requested that Turner come to the police station to discuss the matter and view the video. Turner agreed to meet with Krunich the following day at the police station. According to Krunich, during that interview, Turner admitted that he "may have slipped up and took it out of the restaurant" because he was taking food and was in a hurry.

{¶18} On cross-examination, Krunich conceded that Turner mentioned that he did not intend to steal the credit card. According to Krunich, Turner said, on one occasion, that he intended to give it back to the manager and, on another occasion, that "he was trying to give it back to the people." Krunich spoke with Turner on multiple occasions and found his responses to be inconsistent with the video evidence. Overall, Krunich did not believe Turner was being truthful with him.

{¶19} In addition to the surveillance videos and telephone call with the detective, excerpts of telephone calls placed by Turner from jail were played for the jury. During one of those telephone calls, Turner is conversing with a woman. When she mentions the lack of physical evidence and the lack of evidence of him using the credit card, Turner states, "H***, no, I got rid of that [m]***f***er."

**{¶20}** Viewing the evidence in the light most favorable to the State, a rational juror could have found that Turner, without Hern's consent, knowingly obtained his credit card with the purpose to deprive him of it. *See* R.C. 2913.02(A)(1). Consequently, there was sufficient evidence to convict Turner of theft. Turner's first assignment of error is overruled.

<u>Assignment of Error Number Three</u>

> THE TRIAL COURT ERRED BY IMPOSING A MAXIMUM SENTENCE ON DEFENDANT BECAUSE HE EXERCISED HIS RIGHT TO TRIAL INSTEAD OF PLEADING GUILTY.

**{¶21}** In his third assignment of error, Turner argues that the trial court sentenced him more harshly because he exercised his right to a jury trial. Based on the record before us, we agree.

**{¶22}** "[A] defendant is guaranteed the right to a trial and should never be punished for exercising that right or for refusing to enter into a plea agreement." *State v. O'Dell*, 45 Ohio St.3d 140 (1989), paragraph two of syllabus. While a defendant is free to engage in plea negotiations with the State, a trial court must refrain from creating the appearance that the failure to plead will result in a more severe sanction. *State v. Jackson*, 9th Dist. Lorain No. 12CA010155, 2012-Ohio-4872, ¶ 10. There is a distinction between a trial court placing a plea offer on the record and a trial court pressuring a defendant to accept a plea offer. *Compare State v. Paige*, 9th Dist. Summit No. 22377, 2005-Ohio-5810, ¶ 20 (affirming sentence where trial court made no reference whatsoever as to how defendant would be sentenced if plea was accepted or rejected) *with Jackson* at ¶ 9-10 (vacating plea where court commented on evidence and guaranteed prison time if convicted at trial). If a court makes statements from which it can be inferred that the sentence was increased due to a defendant's decision to proceed to trial, then that sentence must be vacated unless the record contains unequivocal evidence that the decision

to proceed to trial was not considered when sentencing the defendant. *State v. Chapman*, 190 Ohio App.3d 528, 2010-Ohio-5924, ¶ 30 (9th Dist.). The "prohibition on increased punishment applies 'no matter how overwhelming the evidence of [defendant's] guilt.'" (Alteration sic.) *Id.* at ¶ 29, quoting *State v. Morris*, 159 Ohio App.3d 775, 2005-Ohio-962, ¶ 12 (4th Dist.).

**{¶23}** In the instant matter, prior to the trial, counsel "had some discussions regarding this case in chambers about potential sentences." On the record, the prosecutor summarized the plea offer as follows: if Turner pleaded guilty, the State would agree to either (1) an eight-month prison sentence or (2) a presentence investigation with the State arguing for a ten-month prison sentence and the defendant for community control sanctions. Turner's counsel responded that Turner "still would like to exercise his right to a jury trial." The trial judge warned Turner:

> When someone refuses to accept responsibility and if the jury convicts them, I take that into account, so I indicated to your attorney that, if you were to plead guilty and accept responsibility, then I will probably give you [c]ommunity [c]ontrol and maybe some house arrest, but that, after a trial, if you are convicted, in light of your record, that would not be the case. You know, it would be more likely you would be going to prison, so that's the way it is.

The trial judge further remarked, "I've heard a little bit of the evidence, I don't know what will happen, * * * [b]ut I have a feeling there might be [a video] in this case." Turner reiterated that he was "prepared for trial." His counsel noted that Turner had seen the video and heard his recorded telephone conversation with the detective. The trial judge again questioned, "You are rejecting the offer of [c]ommunity [c]ontrol[2] with house arrest?" and Turner responded that he was.

**{¶24}** At the sentencing hearing, the trial judge referenced back to the items she mentioned prior to the trial, namely that (1) by going to trial, Turner was not accepting

---

[2] We note that community control was not the agreement offered by the State; rather, that was offered by the court.

responsibility; (2) there was video evidence; and (3) he had a prior criminal record. The trial judge chastised Turner for his failure to "accept full responsibility * * * despite * * * [the] video evidence." The trial judge remarked on "the stress" the victim and the witnesses went through. *Contrast State v. Collmar*, 9th Dist. Summit No. 26496, 2013-Ohio-1766, ¶ 35 (wherein trial court expressly stated it would not consider statements regarding what the defendant was offered or that he put the victim through a trial). Noting that Turner claimed to accept responsibility only after being convicted, the judge did not find Turner's "remorse to be sincere." Ultimately, the judge sentenced Turner to twelve months of incarceration, the maximum prison term authorized for his fifth-degree theft offense. *See* R.C. 2929.14(A)(5).

**{¶25}** The trial judge's statements both before the trial and at the sentencing hearing created the appearance that she sentenced Turner to prison, rather than community control, because he chose to proceed to trial rather than accept a plea offer. Based on the record before us, the inference that Turner's sentence was increased due to his decision to proceed to trial remains unrebutted. *See Chapman*, 2010-Ohio-5924, at ¶ 32. Accordingly, Turner's sentence must be vacated and this matter remanded for resentencing.

**{¶26}** Turner's third assignment of error is sustained.

Assignment of Error Number Two

> THE TRIAL COURT IMPOSED A TWELVE MONTH SENTENCE ON A FIFTH DEGREE FELONY IN VIOLATION OF STATUTORY LAW.

**{¶27}** In his second assignment of error, Turner argues that the trial court failed to comply with R.C. 2929.13(B)(1) when sentencing him. In light of our resolution of Turner's third assignment of error, this argument is not yet ripe for our review.

III

{¶28}   Turner's assignment of error number one is overruled.  His conviction for theft is affirmed.   Turner's assignment of error number three is sustained.   His sentence is vacated. Turner's assignment of error number two is not yet ripe for our review.  The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and this matter is remanded for resentencing consistent with this opinion.

Judgment affirmed in part,<br>
reversed in part,<br>
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

HENSAL, P. J.
MOORE, J.
CONCUR.


APPEARANCES:

DONALD GALLICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.