[Cite as *State v. Choate*, 2015-Ohio-4972.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27612 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAVID S. CHOATE, JR. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 13 05 1322(A) |

DECISION AND JOURNAL ENTRY

Dated: December 2, 2015

HENSAL, Presiding Judge.

{¶1} David Choate appeals from his convictions in the Summit County Court of Common Pleas. For the reasons set forth below, we affirm in part, reverse in part, and remand the matter for further proceedings.

I.

{¶2} On April 2, 2013, Joseph Kowalski arrived at Advance Excavation, the company he owned, and discovered that a red Dodge Ram dump truck, a white Ford F-250, and several tools had been taken during the night. The police eventually arrested numerous people in connection with the theft, including Mr. Choate. Many of Mr. Choate's co-defendants pleaded guilty and testified against him at trial. The jury convicted Mr. Choate of breaking and entering and three counts of grand theft, and the trial court sentenced him to an aggregate prison term of 54 months.

{¶3}   Mr. Choate has appealed, raising seven assignments of error for our review.  For ease of discussion, we discuss his assignments of error out of order.

## II.

### ASSIGNMENT OF ERROR VI

THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A FINDING OF GUILT FOR THREE COUNTS OF GRAND THEFT AND BREAKING AND ENTERING.

{¶4}   Mr. Choate asserts in his sixth assignment of error that his convictions are not supported by sufficient evidence.  Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶5}   The jury found Mr. Choate guilty of violating Revised Code Section 2911.13(A)/(B) by committing breaking and entering and of violating Section 2913.02(A)(1) by committing grand theft.  Section 2911.13 provides,

(A)   No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony.

(B)   No person shall trespass on the land or premises of another, with purpose to commit a felony.

Section 2913.02(A)(1) provides that, "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent." "If the value of the property or services stolen is seven thousand five hundred dollars or more and is less than one hundred fifty thousand dollars, a violation of this section is grand theft, a felony of the fourth degree." R.C. 2913.02(B)(2).

{¶6} Kevin Ervin testified that he knew Mr. Choate because the mother of Mr. Ervin's child was Mr. Choate's sister. On April 2, 2013, Mr. Choate was staying with his sister and Mr. Ervin. Mr. Choate left that evening and returned around 5:30 to 6:00 a.m. the next morning. Mr. Choate asked Mr. Ervin if he could store some things in his basement, which Mr. Ervin allowed because he thought Mr. Choate had gotten some property back from his ex-girlfriend. Mr. Ervin went back to bed and did not see what Mr. Choate brought in until that evening. At some point later, Mr. Ervin saw "weed eaters, saws, * * * tools, construction equipment, that kind of stuff" in his basement. Thereupon, Mr. Ervin told Mr. Choate to remove the items.

{¶7} Heather Satterfield testified that she met Mr. Choate on the night of the theft and had not seen him since that night other than in passing at a bar. According to Ms. Satterfield, on the night of the theft, she received a call from a man named "Andy," a friend of her ex-boyfriend, who asked her to give him and Mr. Choate a ride. Ms. Satterfield drove to a home she believed belonged to Mr. Choate's sister. Jason King was with her. At the house, she picked up Mr. Choate, "Henry or Andy," and Wendy Cummings and drove them and Mr. King to Macedonia. The group stopped at a BP before Ms. Satterfield "dropped the[ three men] off down the road." Eventually, she received a message from Mr. King telling her to meet the men back at the BP. When she arrived back at the BP station with Ms. Cummings, she saw the men

with two dump trucks: "[a] white one and a red one." She saw tools in the back of one of the trucks. According to Ms. Satterfield, she entered the BP to purchase a Mountain Dew for Mr. Choate and then they all left. Mr. Choate drove one of the trucks, "Andy" and Ms. Cummings were in the other, and Mr. King rode with Ms. Satterfield. They drove back to the home of Mr. Choate's sister arriving at approximately 6:30 a.m., and unloaded the tools.

{¶8} Harry "Andy" Croft testified that he met with Mr. Choate on April 2, 2013, and the two "discussed some stuff that could be easily obtained through stealing, * * * and, basically, just went and stole the stuff." He elaborated that he, Mr. Choate, and Mr. King were dropped off in Macedonia, and that the trio walked to a building. They opened the garage door of the building to reveal shelves of tools, and they proceeded to load the tools into the back of the red dump truck. Mr. Croft drove the red dump truck out of the building but stopped because he could not get the lights on the truck to turn on. Mr. Choate, driving another truck pulled up next to him, and Mr. Choate helped him turn on the headlights. After the group returned to Mr. Choate's sister's home, they unloaded the tools. Mr. Croft took some of the tools for himself and sold them.

{¶9} Mr. Kowalski testified that he received a call from his son on the morning of April 2, 2013. His son told him that he was at their business, that the garage was open, and that numerous items had been taken. Mr. Kowalski drove to meet his son and saw that a red dump truck and a white utility truck were gone, as well as many of the more valuable tools. Mr. Kowalski saw that two other buildings had been broken into besides the garage, including the office building. A fourth building on the premises, which was leased to another company, had not been broken into. Mr. Kowalski testified that whomever broke into the buildings seemed familiar with the business because they found the cash kept in the office without needing to

rummage through the drawers and also left behind tools that outwardly appeared fine but actually needed to be serviced. However, "all the good ones" were taken. Mr. Kowalski verified that a document entered into evidence was an accurate list of all of the tools that had been stolen. Mr. Kowalski testified that Advance Excavation had paid $56,000 for the tools. He also testified that, the day before the theft, Mr. Choate, who was a former employee, called to ask for his job back. Mr. Kowalski told Mr. Choate that he did not have a job for him.

{¶10} Detective Brian Vince of the Macedonia Police Department testified that he investigated the break-in at Advance Excavation. During the course of his investigation, he learned that Mr. Choate had asked to be rehired by Advance Excavation the day before the break-in. A few days later, Mr. Choate was taken into custody and a saw belonging to Advance Excavation was found in the car that Mr. Choate had been occupying. The police also located both trucks that had been taken from Advance Excavation. The white Ford utility truck was found in a building a couple of miles from Mr. Ervin's home. The red Dodge dump truck was found behind a bar in Barberton. Detective Vince testified that Christopher Inman got the dump truck from Mr. Choate. When Mr. Imman got into a "private property accident," however, he parked it behind the bar and fled.

{¶11} Detective Vince interviewed Mr. Choate about the incident while Mr. Choate was in custody, and a video of the interview was entered into evidence. Mr. Choate told Detective Vince that he could find the missing tools for him if he was let out of custody. Detective Vince declined to let Mr. Choate out of custody. When pressed by Detective Vince, Mr. Choate indicated that he had committed the break-in because he wanted to start his own business.

{¶12} Mr. Choate's only argument in support of this assignment of error is that his convictions were not supported by sufficient evidence because "almost all witnesses against

[him] testified as part of a plea agreement to reduce their sentences." However, this challenges the manifest weight of the evidence, not the sufficiency of the evidence. *See State v. Brown*, 9th Dist. Summit No. 25287, 2011–Ohio–1041, ¶ 14, citing *State v. Porter*, 9th Dist. Summit No. 24996, 2010–Ohio–3980, ¶ 9 ("[A] sufficiency challenge tests the State's production of evidence, not the persuasiveness of the evidence produced."). Viewing the evidence at trial in the light most favorable to the State, there was sufficient evidence to support his convictions for one count of breaking and entering and three counts of grand theft.

{¶13} Accordingly, his sixth assignment of error is overruled.

ASSIGNMENT OF ERROR VII

THE VERDICTS OF GUILTY FOR THREE COUNTS OF GRAND THEFT AND BREAKING AND ENTERING WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} In Mr. Choate's seventh assignment of error, he asserts that his convictions are against the manifest weight of the evidence. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." *State v. Glunt*, 9th Dist. Medina No. 13CA0050-M, 2014-Ohio-3533, ¶ 18, quoting *State v. Carr*, 9th Dist. Summit No. 26661, 2014-Ohio-806, ¶ 28. To determine whether a conviction is against the manifest weight of the evidence, this Court

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side.

*Thompkins*, 78 Ohio St.3d at 387. The appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *Otten* at 340.

{¶15} Mr. Choate advances no argument in support of this assignment of error. Instead, he merely discusses the standard of review and concludes, "in the present case[,] the jury lost its way when it convicted Mr. Choate of three counts of theft and breaking and entering." It is not this Court's duty create Mr. Choate's argument for him. *See State v. Brownlee*, 9th Dist. Summit No. 27255, 2015-Ohio-2616, ¶ 35.

{¶16} Furthermore, even considering the argument raised in Mr. Choate's sixth assignment of error, we cannot conclude, after a thorough review of the entire record, that the jury lost its way when it found Mr. Choate guilty of breaking and entering and three counts of grand theft. While a number of Mr. Choate' co-defendants did receive reduced sentences in exchange for their testimony, the jury was well aware of this information and were able to consider it when weighing the testimony. *See State v. Jackson*, 9th Dist. Summit No. 26757, 2013-Ohio-5557, ¶ 16, 21 (noting that a co-defendant's plea deal is a factor for the jury to weigh when considering the credibility of the co-defendant's testimony). Furthermore, a video recording of a police interview of Mr. Choate was entered into evidence, and, during that interview, Mr. Choate told the officer that the reason he had taken the tools was because he wanted to start his own business.

{¶17} Accordingly, Mr. Choate's seventh assignment of error is overruled.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY RULING THAT GRAND THEFT, GRAND THEFT AND GRAND THEFT WERE NOT ALLIED OFFENSES OF SIMILAR IMPORT ALTHOUGH THE ALLEGED THEFTS ALL OCCURRED AT THE SAME PLACE, AT THE SAME TIME, INVOLVING THE SAME INDIVIDUALS AGAINST THE SAME VICTIM.

{¶18} Mr. Choate argues in his first assignment of error that his three grand theft offenses are allied offenses of similar import and should merge. Revised Code Section 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, which prohibits multiple punishments for the same offense. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 23. It provides:

> (A) [If] the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) [If] the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

{¶19} The Ohio Supreme Court has recently clarified the test courts must apply when determining whether offenses are allied offenses of similar import. In *State v. Ruff*, 143 Ohio St.3d 114, 2015–Ohio–995, it held that "courts must evaluate three separate factors—the conduct, the animus, and the import." *Id*. at paragraph one of the syllabus. "[A] defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id*. at paragraph three of the syllabus. "When deciding whether to merge multiple offenses at sentencing pursuant to R.C. 2941.25, a court must review the entire record, including arguments and information presented at the sentencing hearing, to determine whether the offenses were committed separately or with a separate animus." *State v.*

*Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, syllabus. It is a defendant's burden to demonstrate that he or she is entitled to have two offenses merge. *Id.* at ¶ 18. To do so, the defendant must show that the State relied upon the same conduct to support both offenses. *State v. Logan*, 60 Ohio St.2d 126, 128 (1979).

{¶20} Mr. Choate was convicted of three counts of grand theft. The indictment specifies that the first grand theft charge was related to the taking of the tools, the second charge was for the taking of the white 2005 Ford F-250 utility truck, and the third count was for stealing the red 2007 Dodge dump truck. The evidence at trial established that Mr. Choate drove the Ford utility truck away from Advance Excavation while Mr. Croft drove the Dodge dump truck, which was loaded with tools that Mr. Choate and the others had taken from the Advance Excavation building. The trial court declined to merge Mr. Choate's grand-theft convictions because it determined that they had been committed with separate conduct and separate animi. Specifically, it determined that separate conduct formed the basis for each of the thefts.

{¶21} Although Mr. Choate did not personally drive the red Dodge dump truck away from Advance Excavation, he was complicit in its theft. The evidence at trial supported the conclusion that Mr. Choate had organized the break in and thefts at Advance Excavation, that he had helped recruit people for the task, that he had assisted in loading the dump truck with tools, and that he helped the driver of the dump truck, after the driver had driven a short distance, to activate the headlights on the truck. *See* R.C. 2923.03(A) ("No person, acting with the kind of culpability required for the commission of an offense, shall * * * (1) Solicit or procure another to commit the offense * * * [or] (2) Aid or abet another in committing the offense."). Each of these acts is conduct separate from the act of him stealing the Ford utility truck. *See Ruff* at paragraph three of the syllabus. *See also State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, syllabus

("When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered."). Similarly, the act of loading the tools into the truck is separate and distinct conduct from the planning, the recruiting, and the assisting with the lights, and it is separate from his act of driving the white Ford utility truck away. Further, at some point, Mr. Choate ended up with and attempted to hide at least some of the tools which were carried from the scene in the dump truck.

{¶22} Even assuming that for the sake of argument that the conduct of Mr. Choate could have formed the basis for all of his convictions, Mr. Choate has not demonstrated that all of his convictions *were* based on the same conduct. As noted above, Mr. Choate bore the burden of demonstrating that the State relied upon the same conduct to support both offenses. *See Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, at ¶ 18. Based upon the evidence at trial and the arguments raised in the trial court and on appeal, we cannot conclude Mr. Choate has carried that burden here.

{¶23} Accordingly, Mr. Choate's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT ABUSED ITS DISCRETION AND SENTENCED APPELLANT TO THREE CONSECUTIVE MAXIMUM SENTENCES FOR GRAND THEFT, DESPITE THE FACT THAT THE THEFTS OCCURRED AT THE SAME TIME AND INVOLVED THE SAME VICTIM.

{¶24} Mr. Choate argues in his second assignment of error that the trial court abused its discretion when it sentenced him to an aggregate prison term of 54 months. According to Mr. Choate, this sentence fails to follow the principles and purposes of felony sentencing.

**{¶25}** This Court reviews sentences pursuant to the two-step approach set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912. *See State v. Thomas*, 9th Dist. Summit No. 27435, 2015-Ohio-2379, ¶ 20.

> First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard.

*Id*., quoting *Kalish* at ¶ 26. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶26}** Mr. Choate concedes that each of his grand theft sentences is within the permissible range but argues that, by ordering the sentences to run consecutively, the trial court failed to consider the principles and purposes of felony sentencing. "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). Mr. Choate argues that a 54-month prison term was not the minimum appropriate sanction for achieving those purposes.

**{¶27}** However, "'Ohio's felony-sentencing scheme is clearly designed to focus the judge's attention on one offense at a time.'" *State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, ¶ 6, quoting *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 8. *See also Saxon* at paragraph two of the syllabus ("The sentencing-package doctrine has no applicability to Ohio sentencing laws: the sentencing court may not employ the doctrine when sentencing a defendant and appellate courts may not utilize the doctrine when reviewing a sentence or sentences."). In

other words, R.C. 2929.11 clearly is aimed at the sentence for each individual offense, not the sentences in aggregate, and Mr. Choate has not argued that a sentence of 18 months imprisonment for any of the individual grand theft charges is an abuse of discretion under the circumstances. *See* App.R. 16(A)(7). Instead, he is essentially arguing about the trial court's decision to run the prison terms consecutively with each other.

{¶28} Revised Code Section 2929.14(C)(4) governs the imposition of consecutive sentences. Section 2929.14(C)(4) provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

Mr. Choate does not suggest that the trial court did not make the necessary findings pursuant to Section 2929.14(C)(4). Instead, he argues that, because Mr. Choate's crimes were nonviolent and only targeted an acquaintance, he was not a threat to the public at large. The trial court, however, recounted Mr. Choate's rather lengthy criminal history at the sentencing hearing, noting his previous theft-related offenses, his inability to complete community control in previous cases, and that he had committed crimes while other cases were pending against him.

Under the circumstances, we cannot conclude the trial court abused its discretion when it determined that Mr. Choate posed a threat to the public and that consecutive sentences were necessary to protect the public and not disproportionate to the threat posed.

{¶29} Accordingly, we overrule Mr. Choate's second assignment of error.

ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT REFUSED TO GIVE APPELLANT CREDIT TOWARD HIS SENTENCE FOR THE TIME HE SPENT IN THE MACEDONIA AND SUMMIT COUNTY JAIL.

{¶30} Mr. Choate argues in his third assignment of error that the trial court erred when it determined he was not entitled to any jail-time credit in this case. Mr. Choate argues that he was entitled to jail-time credit for the time spent in the Summit County jail while the trial was pending and for time spent in the Macedonia jail.

{¶31} Revised Code Section 2929.19(B)(2)(g)(i) requires a sentencing court to

[d]etermine, notify the offender of, and include in the sentencing entry the number of days that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced and by which the department of rehabilitation and correction must reduce the stated prison term under section 2967.191 of the Revised Code.

However, "[t]he court's calculation shall not include the number of days, if any, that the offender previously served in the custody of the department of rehabilitation and correction arising out of the offense for which the prisoner was convicted and sentenced." *Id.* In other words, "'there is no jail-time credit for time served on unrelated offenses * * *.'" *State v. Smith*, 11th Dist. Geauga No. 2014-G-3185, 2014-Ohio-5076, ¶ 16, quoting *State v. Struble*, 11th Dist. Lake No. 2005-L-115, 2006-Ohio-3417, ¶ 11.

{¶32} There is no dispute that, at the time the trial in this case took place, Mr. Choate was serving a prison term for an unrelated offense; Mr. Choate's trial counsel acknowledged this

fact during the sentencing hearing. Thus, the trial court did not err when it determined Mr. Choate was not entitled to jail-time credit for the time he served during the pendency of this trial.

{¶33} Mr. Choate, however, also argues that he was entitled to jail-time credit for the time he spent in Macedonia jail immediately following his arrest in this case. While an offender would typically receive jail-time credit for this period of confinement pursuant Section 2967.191, there is information in the record indicating that, when Mr. Choate committed the thefts in this case, he was on bond awaiting trial in the Wayne County case. Although his arrest was related to this case, it would also likely have violated his bond in that case, meaning that he could well have received jail-time credit in his Wayne County case as a result of that confinement. The appellate record, however, simply does not contain sufficient information for us to conclude that an error occurred. This issue was never discussed at the sentencing hearing, and it does not appear a presentence investigation report was ever prepared. Thus, we cannot conclude, based upon the appellate record, that Mr. Choate has demonstrated that the trial court erred when it did not give him jail-time credit. *But see* R.C. 2929.19(B)(2)(G)(iii) ("The sentencing court retains continuing jurisdiction to correct any error not previously raised at sentencing in making a determination under division (B)(2)(g)(i) of this section.").

{¶34} Accordingly, Mr. Choate's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE MAXIMUM SENTENCES ON APPELLANT AND REFUSING TO GIVE APPELLANT CREDIT FOR TIME SERVED IN THE SUMMIT COUNTY JAIL BECAUSE HE EXERCISED HIS RIGHT TO TRIAL INSTEAD OF PLEADING GUILTY.

{¶35} In Mr. Choate's fourth assignment of error, he argues that the trial court sentenced him more harshly because he exercised his right to trial. "[A] defendant is guaranteed the right to a trial and should never be punished for exercising that right or for refusing to enter into a plea

agreement[.]" *State v. O'Dell*, 45 Ohio St.3d 140 (1989), paragraph two of syllabus. "While a defendant is free to engage in plea negotiations with the State, a trial court must refrain from creating the appearance that the failure to plead will result in a more severe sanction." *State v. Turner*, 9th Dist. Summit No. 27210, 2014-Ohio-4460, ¶ 22. "If a court makes statements from which it can be inferred that the sentence was increased due to a defendant's decision to proceed to trial, then that sentence must be vacated unless the record contains unequivocal evidence that the decision to proceed to trial was not considered when sentencing the defendant." *Id.*

**{¶36}** Mr. Choate argues that, because the trial court commented before the trial that it was aware that Mr. Choate believed the offenses should merge, the trial court's failure to merge the offenses, along with its "refus[al] to credit [him] [with] the jail credit in which he was legally entitled[,] * * * demonstrated that [his] sentence was punishment for exercising his constitutional right to a trial by jury." As we explained above, however, the trial court correctly determined that Mr. Choate's offenses did not merge and that he was not entitled to the jail time credit he requested. The court's decisions on those matters, therefore, do not demonstrate that it had an improper motive when it imposed Mr. Choate's sentence. Mr. Choate's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

> THE TRIAL COURT ERRED BY ORDERING RESTITUTION WITHOUT
> CONDUCTING A HEARING ON THE DISPUTED AMOUNT AS REQUIRED
> BY R.C. 2929.18(A)(1).

**{¶37}** Mr. Choate argues in his fifth assignment of error that the trial court erred in imposing restitution without holding a hearing to determine the disputed amount. Revised Code Section 2929.18 permits a sentencing court to impose financial sanctions as part of an offender's sentence for a felony. Section 2929.18 provides, in pertinent part,

(A) * * * Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender.

*Id.*

{¶38} "An award of restitution is limited to the actual loss caused by the defendant's criminal conduct for which he or she was convicted, and there must be competent credible evidence in the record from which the court may ascertain the amount of restitution to a reasonable degree of certainty." *State v. Henderson*, 9th Dist. Summit No. 26682, 2013-Ohio-2798, ¶ 7. "If the offender disputes the amount of restitution, the trial court is required to hold a hearing on restitution." *Id.*, citing R.C. 2929.18(A)(1).

{¶39} At the sentencing hearing, the prosecutor told the court, "The tools came out to around 56,000 some odd dollars but a lot of that was paid by insurance. The amount outstanding not paid by insurance $19,915." Mr. Choate's attorney subsequently stated,

Regarding the restitution, it's my understanding – it's not as clear, I don't think, as the prosecutor said, there was a large amount of money paid, not only by Nationwide Insurance Company, but by a secondary insurance company, as well. * * * There's also the issue of Mr. Choate's last paycheck, which was kept by the Kowalskis, purportedly by Mr. Kowalski in a letter, and I have a letter from Mr.

Kowalski saying, 'We're holding your last paycheck because of the money you owe us for the damages you have caused through the course of your employment.'"

After hearing from the prosecutor and Mr. Choate's counsel, the trial court sentenced him and ordered that he pay $19,915 in restitution. Mr. Choate's counsel objected to the imposition of the restitution.

{¶40} We recognize that Mr. Choate's counsel never requested an evidentiary hearing on the issue of restitution, but we cannot say that Mr. Choate did not make it clear that he disputed the amount of requested restitution. Thus, the trial court was required to hold a hearing. *See Henderson* at ¶ 7; R.C. 2929.18(A)(1). Seemingly recognizing this, the State urges us to conclude that the statements of the prosecutor and Mr. Choate's counsel satisfy the "evidentiary hearing" required by Section 2929.18(A)(1). To reach that conclusion, however, we would also have to conclude that the portion of Section 2929.18(A)(1) requiring an "evidentiary hearing" is meaningless as a trial court already has wide discretion in considering information before it at sentencing. *See State v. Asefi*, 9th Dist. Summit No. 26931, 2014-Ohio-2510, ¶8 ("R.C. 2929.19 sets out a procedure less formal than an evidentiary hearing for interested parties to submit arguments and information to the trial court."). If the trial court could just consider the statements of attorneys, there would be no need for an evidentiary hearing.

{¶41} Furthermore, it seems unlikely that an "evidentiary hearing" would require less than the opportunity to cross-examine witnesses about the amount of restitution. *See, e.g., State v. Wohlgemuth*, 66 Ohio App.3d 195, 200 (8th Dist. 1990) (finding reversible error when "[t]he court failed to hold a hearing at which evidence would be presented of the damages and costs and the effort and ability to pay."). *See also Cleveland Metro. Bar Assoc. v. Toohig*, 133 Ohio St.3d 548, 2012-Ohio-5202, ¶ 8 ("Toohig received the full benefit of an adversarial evidentiary

hearing at which he had the opportunity to, and in fact did, cross-examine relator's witnesses, present witnesses of his own, and offer exhibits."); *State v. Johnston*, 2d Dist. Montgomery No. 26016, 2015-Ohio-450, ¶ 24 (noting that an evidentiary hearing is held when testimony is fully presented and parties are permitted to engage in cross-examination). That did not happen in this case as no testimony or evidence was actually presented, just the prosecutor's statements about information that had apparently been passed to her by the victims. Under the circumstances, we cannot conclude that the trial court satisfied the hearing requirement of Section 2929.18(A)(1).

**{¶42}** Accordingly, Mr. Choate's fifth assignment of error is sustained.

III.

**{¶43}** Mr. Choate's fifth assignment of error is sustained, and his remaining assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
JENNIFER HENSAL
FOR THE COURT

SCHAFER, J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶44} I respectfully dissent in part from the majority's resolution of Mr. Choate's first assignment of error. The evidence demonstrates that Mr. Choate's convictions stem from the same conduct.  Mr. Choate's goal was to steal tools in order to start his own excavating business. To effectuate this goal, he loaded the stolen tools into two different trucks and he and Mr. Croft drove away from the buildings. After unloading the tools, the two men abandoned one of the trucks and gave another truck away. Clearly, the trucks were used solely as a means to transport the stolen tools, resulting in a separate animus.  Because the theft of the tools was committed with a separate animus from the theft of the two trucks, for purposes of sentencing, I would not merge the offense of the grand theft of the tools, but I would merge the two grand theft offenses relating to the trucks with each other.

{¶45} I concur with the remainder of the majority's opinion.

APPEARANCES:

JAMES W. ARMSTRONG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.