[Cite as *State v. Henry*, 2015-Ohio-5095.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 27392 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KENNETH HENRY | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 13 12 3374 |

DECISION AND JOURNAL ENTRY

Dated: December 9, 2015

HENSAL, Presiding Judge.

{¶1} Kenneth Henry appeals his convictions for rape and gross sexual imposition in the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} On the first weekend of November 2013, twelve-year-old M.H. was staying at her mother's house. On Friday evening, she went to bed wearing a pair of black pajama shorts. She was still wearing them on Saturday when she saw her mother's boyfriend, Mr. Henry. She later changed out of the shorts because she was going shopping with her mother. When she next saw Mr. Henry, he told her that she should put the pajama shorts back on because she "looked hot in them." M.H. did not tell her mother about the comment because she did not think her mother would believe that Mr. Henry had said it.

{¶3} M.H. testified that, after they returned to the house, she was alone in the kitchen with Mr. Henry and he asked her whether she had ever had her "private part [e]aten out."

Although the question made her uncomfortable, she again did not tell her mother about it. That evening, her mother left for work, but Mr. Henry stayed at the house to watch M.H.'s younger sister.

{¶4} According to M.H., after her mother left, she spent some time on the computer, then changed into her pajama shorts and lay down on a couch under a blanket to watch television. She eventually fell asleep. When she awoke, Mr. Henry was hovering over her and had his hand under the blanket over her vaginal area. She tried to pretend that she was asleep, but Mr. Henry moved the blanket aside and pulled her shorts and underwear down. He got on top of her, then stood back up and removed his pants. When he got on top of her again, "he put his private part" in her vagina. M.H. testified that he eventually took it out, but then he moved his head down to her vagina and began licking it. After he finished, he moved back to where he had been and "put his private part back in my private area." She testified that Mr. Henry also reached under her shirt and put his hands on her breasts. A couple of minutes later he got off of her and told her that he "had comed."

{¶5} M.H. testified that, after Mr. Henry left the room, she put her clothes back on. Since it was "morning-ish," she got on the computer and began to exchange messages with her best friend, eventually telling her what had happened. The friend told her mother, and the two of them came over to talk to M.H. M.H. was uncomfortable talking about it, so she wrote down what happened instead. Although M.H.'s mother was home at the time, she was asleep. After reading M.H.'s note, the friend's mother woke M.H.'s mother, gave her the note, and convinced her to call the police. When the police arrived, they took M.H. to the hospital for evaluation. DNA testing indicated that Mr. Henry's sperm was in M.H.'s underwear.

{¶6} The Grand Jury indicted Mr. Henry for two counts of rape and one count of gross sexual imposition. A jury found him guilty of the offenses, and the trial court sentenced him to a total of 25 years to life imprisonment. Mr. Henry has appealed, assigning five errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT WHEN IT ALLOWED THE HEARSAY STATEMENT OF M.H. TO BE READ INTO THE RECORD.

{¶7} Mr. Henry argues that the trial court erred when it allowed the State to admit the note in which M.H. described the sexual assault. The court determined that it was admissible under the excited utterance exception to the hearsay rule. Mr. Henry argues that too much time elapsed between when the alleged attack happened and when M.H. gave the note to her friend's mother for it to fall under that exception.

{¶8} Even if the trial court should not have admitted the note, Mr. Henry must demonstrate that he was prejudiced by its admission. *See* Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."). Mr. Henry has not argued in his appellate brief how admission of the note prejudiced his substantial rights. *See* App.R. 16(A)(7); *State v. Simmons*, 9th Dist. Summit No. 25275, 2011-Ohio-916, ¶ 10. Accordingly, his first assignment of error is overruled.

ASSIGNMENT OF ERROR II

APPELLANT'S CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE TO SUSTAIN CONVICTION OF RAPE. THE TRIAL COURT ERRED BY DENYING APPELLANT'S CRIM.R. 29 MOTION.

{¶9} Mr. Henry argues that the State did not present sufficient evidence to convict him of rape. Whether a conviction is supported by sufficient evidence is a question of law, which

this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶10} Under Revised Code Section 2907.02(A)(1)(b), "[n]o person shall engage in sexual conduct with another * * * when * * * [t]he other person is less than thirteen years of age * * *." Sexual conduct includes "vaginal intercourse between a male and female[.]" R.C. 2907.01(A). Mr. Henry argues that the State's evidence was insufficient because there was no evidence of penetration. According to the definition of sexual conduct, "[p]enetration, however slight, is sufficient to complete vaginal or anal intercourse." *Id.*

{¶11} M.H. testified that Mr. Henry put his "private part" into her on two occasions and that it hurt each time. She also testified that he licked her vagina. Although Mr. Henry argues that, because of her age, M.H. may have been mistaken about what he was doing, under a sufficiency analysis we must view the evidence in a light most favorable to the prosecution. *Jenks* at paragraph two of the syllabus. We also note that, although there was no sperm present, testing of a swab of M.H.'s vagina indicated the presence of a protein found in seminal fluid. Upon review of the record, we conclude that there was sufficient evidence to establish that Mr. Henry engaged in sexual conduct with M.H. in violation of Section 2907.02(A)(1)(b). Mr. Henry's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT WHEN IT REFUSED TO GIVE INSTRUCTIONS ON THE LESSER INCLUDED OFFENSES OF GROSS SEXUAL IMPOSTITION AS DEFENDANT REQUESTED.

{¶12} Mr. Henry next argues that the jury should have been instructed that they could consider the lesser-included offense of gross sexual imposition for the rape charges. He argues that, since his DNA was not detected on the vaginal swab of M.H., but was detected in her underwear, the jury could have concluded that he did not penetrate her and, therefore, only engaged in sexual contact with M.H., not sexual conduct.

{¶13} "The question of whether a particular offense should be submitted to the finder of fact as a lesser included offense involves a two-tiered analysis." *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, ¶ 6. "The first tier, also called the 'statutory-elements step,' is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense." *Id*., quoting *State v. Kidder*, 32 Ohio St.3d 279, 281 (1987). "The second tier looks to the evidence in a particular case and determines whether 'a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.'" *Id*., quoting *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, ¶ 13. "Only in the second tier of the analysis do the facts of a particular case become relevant." *Id*.

{¶14} The Ohio Supreme Court has held that gross sexual imposition under Section 2907.05(A)(4) is a lesser included offense of rape under Section 2907.02(A)(1)(b). *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, ¶ 83. Accordingly, we will proceed to the second tier of the analysis. The relevant gross sexual imposition section provides that "[n]o person shall have sexual contact with another * * * [who] is less than thirteen years of age * * *." R.C.

2907.05(A)(4), (C). Section 2907.01(B) defines sexual contact as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶15} The Grand Jury indicted Mr. Henry for two counts of rape. One of the counts was based on sexual intercourse and the other on cunnilingus. "Penetration is not required to commit cunnilingus. Rather, the act of cunnilingus is completed by placing one's mouth on the female's genitals." *Lynch* at ¶ 86. Mr. Henry, therefore, was not entitled to a lesser-included offense instruction with respect to that sexual conduct count.

{¶16} Regarding the charge of rape based on sexual intercourse, M.H. testified that Mr. Henry put his penis in her vagina and that it "hurt." She testified that, after he finished performing cunnilingus, he put his penis back in her vagina and that it "[s]till hurt." She also testified that, while she was at the hospital, she felt something come out of her body and that it was different than what she had experienced from her menstrual cycle. M.H.'s vaginal swab tested presumptively positive for seminal fluid, even though no sperm was present.

{¶17} On cross-examination, Mr. Henry did not challenge M.H.'s ability to differentiate between mere touching of her genitals and actual penetration of her vagina. He also offered no explanation for the presence of seminal fluid on the vaginal swab. We, therefore, conclude that a jury could not have reasonably found Mr. Henry not guilty of rape, but convicted him of the lesser included offense gross sexual imposition. Mr. Henry's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT IMPROPERLY INCREASED DEFENDANT'S SENTENCE BASED ON HIS REFUSAL TO ACCEPT A PLEA OFFER, INCREASING HIS SENTENCE AS PUNISHMENT FOR EXERCISING HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL.

{¶18} Mr. Henry next argues that the trial court unconstitutionally punished him for proceeding to trial. Although the court did not explicitly tell Mr. Henry that he would receive a longer sentence if he went to trial, before trial, it advised him:

> I want you to understand that if you are found guilty in this case after putting this child through a trial * * * and I understand that you have this right to go to trial and I do not impose a trial tax in the form of a sentence, but I do provide a trial – or I mean a plea incentive based upon someone's acceptance of responsibility for their actions, number one, and based upon their sparing particularly vulnerable witnesses from having to go through the trauma of testimony * * *.
>
> So there is not a trial tax, but there is a * * * plea benefit * * *.

The trial court proceeded to tell Mr. Henry that it had learned that he originally alleged that M.H.'s mother had planted the semen in M.H.'s underwear. She also referred to a "big, long letter" that Mr. Henry had written to the court "in which you [told] me, you know what, you didn't force anybody to do anything," meaning "that any contact you had with this child was consensual[.]" She further told him that, if the jury convicted him, she would sentence him to "25 to life." At sentencing, the court made no reference to his decision to go to trial.

{¶19} "[A] defendant is guaranteed the right to a trial and should never be punished for exercising that right or for refusing to enter a plea agreement * * *." *State v. O'Dell*, 45 Ohio St.3d 140 (1989), paragraph two of the syllabus. Hence, "a trial court must refrain from creating the appearance that the failure to plead will result in a more severe sanction." *State v. Turner*, 9th Dist. Summit No. 27210, 2014-Ohio-4460, ¶ 22. "If a court makes statements from which it can be inferred that the sentence was increased due to a defendant's decision to proceed to trial, then that sentence must be vacated unless the record contains unequivocal evidence that the decision to proceed to trial was not considered when sentencing the defendant." *Id.*

{¶20} The trial court's pretrial statements indicate that its warning to Mr. Henry about the length of the sentence he would receive if he proceeded to trial was based on the information it had learned from Mr. Henry's letter, not his failure to plead guilty. We note that the letter was not made part of the record. Without the context that the letter would provide on this issue, we are unable to determine whether the trial court's remarks were improper. Accordingly, we conclude that Mr. Henry's argument is more suitable for a petition for post-conviction relief. *See State v. Clay*, 9th Dist. Summit No. 27015, 2014-Ohio-3806, ¶ 74; *State v. Porter*, 9th Dist. Medina No. 12CA0061-M, 2013-Ohio-3969, ¶ 38. Mr. Henry's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO MERGE ALL THREE COUNTS AT SENTENCING.

{¶21} Mr. Henry's final argument is that the trial court should have merged his convictions at sentencing because they were all committed with the same animus as part of the same course of conduct. Mr. Henry, however, conceded this assignment of error at oral argument in light of this Court's decision in *State v. Daniels*, 9th Dist. Summit No. 26406, 2013-Ohio-358, ¶ 8-10. His fifth assignment of error is overruled.

III.

{¶22} Mr. Henry's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

SCHAFER, J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶23} I concur in the majority's judgment with regard to the first, second, third, and fifth assignments of error. I dissent, however, as to the resolution of Henry's fourth assignment of error because I believe that the trial court's statements to Henry before trial "creat[ed] the appearance that the failure to plead will result in a more severe sanction" in violation of Henry's constitutional right to trial. *See State v. Turner*, 9th Dist. Summit

No. 27210, 2014-Ohio-4460, ¶ 22, citing *State v. Jackson*, 9th Dist. Lorain No. 12CA010155, 2012-Ohio-4872, ¶ 10.

{¶24} Although the trial court asserted that it "do[es] not impose a trial tax in the form of a sentence" when a defendant rejects a plea bargain and proceeds to trial, its remarks demonstrated otherwise. Moreover, the trial court notified Henry regarding the sentence it intended to impose if he proceeded to trial and the jury convicted him. While opining that Henry would lose at trial, the trial court judge in fact notified him that if he persisted in subjecting the victim to the trauma of a trial, she would impose a greater sentence, specifically "25 [years] to life" in prison, even in the absence of having heard any evidence at trial.

{¶25} In addition, despite the majority's reference to Henry's letter to the trial court, I would conclude that the letter is irrelevant to the issues underlying the fourth assignment of error. Irrespective of anything the trial court might have gleaned from Henry's letter to the court, the trial court judge told Henry that she would impose a greater sentence if he went to trial instead of entering a plea. I would vacate Henry's sentence and remand for resentencing. *See Turner* at ¶ 25.

APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.