[Cite as *State v. Tucker*, 2016-Ohio-1354.]

STATE OF OHIO         )         IN THE COURT OF APPEALS
                           )ss:      NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN    )

STATE OF OHIO                     C.A. No.     14CA010704

     Appellee

     v.                            APPEAL FROM JUDGMENT
                                   ENTERED IN THE
KAREEM L. TUCKER           COURT OF COMMON PLEAS
                                   COUNTY OF LORAIN, OHIO
     Appellant                CASE No.    10CR081026

DECISION AND JOURNAL ENTRY

Dated: March 31, 2016

MOORE, Judge.

**{¶1}** Appellant, Kareem Tucker, appeals his convictions by the Lorain County Court of Common Pleas. This Court affirms in part and reverses in part.

I.

**{¶2}** In the early hours of the morning on July 17, 2010, Delno Clayton called his friend Calvin Parker and asked him to go drinking. Instead, Mr. Clayton and another man, who Mr. Parker identified as Kareem Tucker, stripped Mr. Parker to his undergarments, bound him with duct tape, stole his wallet, phone, and apartment key, and left him in a shed. Mr. Clayton returned a few hours later and, with Mr. Tucker on a cell phone call, demanded the combination to a safe located in Mr. Parker's bedroom. Mr. Parker initially gave incorrect information, but complied when he could hear the cries of children from the phone. Near daybreak, Mr. Parker escaped to a nearby gas station, where the attendant provided him with clothing and allowed him to use her phone to call police.

{¶3}    On the same evening, two men entered Mr. Parker's apartment in Lorain using a key. One man grabbed the resident from behind while the other punched her in the face, and then they dragged her to a bedroom where her three-year-old son slept. The men covered her and her son with a blanket, and one of them lay down on top of them while holding a gun near her head. The other man went to a second bedroom, where two other young children were located. The resident could hear their cries, but could not get away to help them. Over the course of several hours, the men attempted to open a small safe kept in the bedroom. They ultimately obtained the combination from the resident's boyfriend, Calvin Parker, emptied the contents of the safe, and left the resident and her children as they were. The resident identified the two men as Mr. Tucker and Mr. Clayton.

{¶4}    Mr. Tucker was indicted on five charges of kidnapping in violation of R.C. 2905.01(A)(2), one charge of aggravated robbery in violation of R.C. 2911.01(A)(1), one charge of aggravated burglary in violation of R.C. 2911.11(A)(1), one charge of robbery in violation of R.C. 2911.02(A)(2), one charge of burglary in violation of R.C. 2911.12(A)(2), and one charge of vandalism in violation of R.C. 2909.05(A). During the trial court proceedings, Mr. Tucker's attorneys moved to withdraw, and Mr. Tucker began filing numerous documents asserting that by virtue of his status as a "Moorish American Sovereign," he was not subject to the trial court's jurisdiction. Mr. Tucker persistently made these assertions during pretrial appearances. He rejected representation by appointed counsel and assistance by stand-by counsel, but refused to answer any questions posed by the trial court in that regard. Mr. Tucker also declined the trial court's repeated offer for a plea agreement that would result in a sentence of nine years in prison with credit for time served.

{¶5}    Mr. Tucker represented himself during the jury trial, cross-examining several witnesses and making closing argument.  A jury found him guilty of all charges, and the trial court sentenced him to an aggregate prison term of 25 years.  Mr. Tucker filed this appeal.  We have rearranged his assignments of error for ease of disposition.

II.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT ABUSED ITS DISCRETION BY NOT CONDUCTING A COMPETENCY EXAMINATION WHEN THERE WERE INDICIA OF INCOMPETENCY, IN VIOLATION OF [MR.] TUCKER'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

{¶6}    Mr. Tucker's third assignment of error is that the trial court abused its discretion by failing to sua sponte order Mr. Tucker to undergo a competency evaluation before trial.  We do not agree.

{¶7}    "Fundamental principles of due process require that a criminal defendant who is legally incompetent shall not be subjected to trial."  *State v. Berry*, 72 Ohio St.3d 354, 359 (1995).  The measure of competency in this context is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).  "[W]hen there is evidence to create a sufficient doubt of a defendant's competency to stand trial, a trial court may be required to conduct further inquiry on the question and a trial court must always be alert to circumstances suggesting that the accused may be incompetent to stand trial."  *State v. Corethers*, 90 Ohio App.3d 428, 433 (8th Dist.1993), citing *Drope v. Missouri*, 420 U.S. 162, 177, 180 (1975).  "[A]n evidentiary competency hearing is constitutionally required whenever there are sufficient

indicia of incompetency to call into doubt defendant's competency to stand trial." *State v. Were*, 94 Ohio St.3d 173 (2002), paragraph two of the syllabus.

{¶8} R.C. 2945.37 addresses the competency of criminal defendants in Ohio. It provides:

> In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.
>
> * * *
>
> A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code

R.C. 2945.37(B), (G). When a trial court is confronted with whether to order a competency hearing sua sponte, "relevant considerations include: (1) doubts expressed by counsel as to the defendant's competence; (2) evidence of irrational behavior; (3) the defendant's demeanor at trial; and (4) prior medical opinion relating to competence to stand trial." *State v. Rubenstein*, 40 Ohio App.3d 57, 60-61 (8th Dist.1987); *Elyria v. Bozman*, 9th Dist. Lorain No. 01CA007899, 2002-Ohio-2644, ¶ 7. *See also State v. Spivey*, 81 Ohio St.3d 405, 410 (1998) (noting that at the plea stage, a trial court is not required to order a competency hearing sua sponte if the record does not reveal indicia of incompetency).

{¶9} Mr. Tucker urges us to conclude that the trial court was required to order a competency hearing based upon his lengthy pretrial colloquies with the trial court in which he rejected the jurisdiction of the court, maintained that the case was a commercial matter and that the trial court could not exercise authority over him, refused to "contract" with the judge, and

declined to be referenced by his legal name. Filings by Mr. Tucker confirm that his statements, although apparently bizarre, are consistent with the political philosophy that he espouses – that he is a "Moorish American Sovereign" not subject to the laws or to government institutions. As one court has recognized, individuals who espouse such political philosophies "cling[] doggedly to the sovereign citizen script * * *. The colloquy with the court is often characterized by frequent interruptions by the defendant, who attempts to talk over the judge. For the most part, the defendant's statements to the Court are gibberish." *United States v. Cartman*, N.D.Ga. No. 1:10-cr-512-01-JEC, 2013 WL 2445158, *2 (June 5, 2013).

{¶10} Other courts, when faced with similar circumstances, have consistently concluded that while such behavior may reflect unusual beliefs and may go so far as to obstruct trial court proceedings, they are not indicia of incompetency that require a hearing. "[M]erely believing in fringe views does not mean someone cannot cooperate with his lawyer or understand the judicial proceedings around him." *United States v. Gooch*, 595 Fed.Appx. 524, 527 (6th Cir.2014). *Accord United States v. Landers*, 564 F.3d 1217, 1222 (10th Cir.2009) (the defendant's "bizarre behavior" demonstrated not that he was incompetent to stand trial, but that he was "an anti-government protestor * * * engaged in obstructionism[.]"); *United States v. Oehler*, 116 Fed.Appx. 43, 35 (8th Cir.2004) (concluding that the defendant's "nonsensical statements were simply tax protester rhetoric" and noting that the magistrate had found the defendant "was educated and intelligent, understood the charges against him, had a basic understanding of the criminal process, and had the ability to communicate effectively * * *."); *United States v. James*, 328 F.3d 953, 955 (7th Cir.2003) (the fact that a defendant advances unusual political beliefs does not "imply mental instability or concrete intellect * * * so deficient that trial is impossible.").

{¶11} It is worth noting that although Mr. Tucker maintained his anti-government rhetoric throughout the pretrial proceedings, a review of the record as a whole indicates that he participated intelligently and appreciated the nature of the charges against him. Indeed, once trial began, Mr. Tucker's participation demonstrated that he was aware of the progress of the proceedings. He paid attention to the testimony and formulated pertinent questions to pose upon cross-examination. Given all of Mr. Tucker's statements in their context within the proceedings, we cannot conclude that there was sufficient indicia of incompetency to require the trial court to sua sponte order a competency evaluation. Mr. Tucker's third assignment of error is overruled.

### ASSIGNMENT OF ERROR II

[MR.] TUCKER WAS PERMITTED TO GO TO TRIAL PRO SE, WITHOUT MAKING A KNOWING AND INTELLIGENT WAIVER OF COUNSEL, IN VIOLATION OF HIS RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

{¶12} Mr. Tucker's second assignment of error is that the trial court erred by allowing him to proceed pro se because he did not knowingly, intelligently, and voluntarily waive his right to counsel. Specifically, Mr. Tucker has argued that because the record is replete with assertions of his fringe political views, it demonstrates that he did not actually understand the nature and conduct of the proceedings against him. We do not agree.

{¶13} The Sixth Amendment guarantees criminal defendants not only the right to counsel, but also the right to elect self-representation instead. *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph one of the syllabus. As Crim.R. 44(A) explains:

Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel.

A waiver of counsel is intelligent, for example, when a defendant "knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942).

{¶14} In this case, Mr. Tucker repeatedly frustrated the court's attempt to engage him in a dialogue about his waiver by refusing to answer questions, posing objections to the legitimacy of the court and the proceedings, and insisting that he was not subject to the jurisdiction of the trial court. Thus, we must acknowledge from the outset that this case does not present a textbook example of the colloquy between a trial court and defendant on the waiver of counsel. In this respect, we observe that cases discussing waiver of counsel and self-representation "presuppose[] a cooperative defendant willing to engage in reciprocal dialogue with the court" rather than "an uncooperative defendant [who] has refused to accept appointed counsel or engage in a colloquy with the court." *United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir.2008).

{¶15} Mr. Tucker has argued that his very resistance to respond to the trial court's inquiry and the political beliefs that underpin that refusal demonstrate that his waiver of the right to counsel is invalid. We disagree with this proposition. The fact that a defendant adheres to fringe political beliefs similar to Mr. Tucker's is not, standing alone, reason to deny the right to self-representation or to conclude that a waiver of the right to counsel is not knowing, intelligent, and voluntary. *See United States v. Neal*, 776 F.3d 645, 658 (9th Cir.2015).

{¶16} Mr. Tucker has also argued that the trial Court erred by failing to obtain a written waiver of the right to counsel as required by Crim.R. 44(C) in cases that involve a "serious offense." Tucker reasons that this error cannot be considered harmless because his waiver was not knowing, intelligent, and voluntary. Because we have rejected that proposition, and the trial

court substantially complied with Crim.R. 44, this Court also concludes the failure to obtain a written waiver was harmless.

{¶17} Under Crim.R. 44(C), waiver of the right to counsel in cases that involve a serious offense must be in writing. Any felony is a "serious offense." Crim.R. 2(C). If a trial court substantially complies with Crim.R. 44(A), however, the failure to obtain a written waiver is harmless error. *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 39. In other words, the trial court must make "a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel." *Id*., citing *Gibson*, 45 Ohio St.2d at paragraph two of the syllabus. This Court looks to the totality of the circumstances surrounding a waiver of the right to counsel, and "'no one factor is dispositive.'" *State v. Bloodworth*, 9th Dist. Summit No. 26346, 2013-Ohio-248, ¶ 12, quoting *State v. Trikilis*, 9th Dist. Nos. 04CA0096-M, 04CA0097-M, 2005-Ohio-4266, ¶ 13. *See also State v. Herrington*, 9th Dist. Summit No. 25150, 2010-Ohio-6455, ¶ 34.

{¶18} Mr. Tucker's appointed attorney moved to withdraw when Mr. Tucker expressed the opinion that only someone who shared his beliefs could represent his interests. At first, the trial court denied the motion. In the course of doing so, the trial court cautioned Mr. Tucker about his apparent reliance on the advice of a non-attorney known to the court. At his next appearance in court, Mr. Tucker unequivocally stated that he would be representing himself. The trial court attempted to inquire further, but Mr. Tucker refused to answer questions while reiterating that he would represent himself. The trial court asked Mr. Tucker whether he had previous experience with a trial, informed him that appointed counsel would have valuable knowledge and experience, and notified him that he would be responsible to comply with the applicable rules of evidence and procedure.

{¶19} At his next appearance, Mr. Tucker declined counsel again. The trial court reminded him that a successful defense "is establishing that the State doesn't have proof beyond a reasonable doubt" and offered to appoint standby counsel to assist with his defense. The trial court also mentioned, in contrast, that defendants who relied on rhetoric like Mr. Tucker's were usually unsuccessful in their defense. During the course of the pretrial proceedings, the trial court explained the gravity of the charges against Mr. Tucker and the lengthy prison sentence that he faced. When the day of trial arrived, Mr. Tucker remained adamant that he would represent himself. Nonetheless, before the trial started, the trial court explained the procedures for conduct of the trial, noted that the rules of evidence applied, and reminded Mr. Tucker that he did not have to take the stand in his own defense. In each respect, the trial court mentioned the benefits of counsel.

{¶20} The totality of these circumstances demonstrates that, faced with an unusual situation and an uncooperative defendant, the trial court substantially complied with the requirements of Crim.R. 44(A). As such, the failure to obtain a written waiver was harmless, and Mr. Tucker's second argument is not well-taken.

{¶21} Mr. Tucker's second assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

THE STATE'S MISCONDUCT DURING TRIAL DENIED [MR.] TUCKER THE RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶22} Mr. Tucker's fourth assignment of error argues that the misconduct by the State of Ohio during the cross-examination of Calvin Parker and during closing argument deprived Mr. Tucker of his right to due process. Specifically, he objects to (1) a question posed by the State

regarding the violent reputation of people known by Mr. Tucker who were at the same correctional facility as Mr. Parker and (2) a comment regarding Mr. Parker's response to that question during closing argument.

**{¶23}** In both respects, failure to object during trial forfeits all but plain error review on appeal. *State v. Bowerman*, 9th Dist. Medina No. 13CA0059-M, 2014-Ohio-4264, ¶ 16, citing *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 242. When a party who has forfeited error fails to articulate a plain error argument on appeal, this Court will not undertake the analysis on the appellant's behalf. *Id.* Mr. Tucker did not object to either instance of alleged misconduct during trial, and he has not argued plain error in the context of this appeal. We decline to undertake the plain error analysis on his behalf.

**{¶24}** Mr. Tucker's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT DENIED [MR.] TUCKER DUE PROCESS, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, BY RETALIATING AGAINST [MR.] TUCKER FOR EXERCISING HIS RIGHTS TO NOT PLEAD GUILTY AND HAVE HIS CASE TRIED BEFORE A JURY.

**{¶25}** Mr. Tucker's first assignment of error is that the trial court erred by retaliating against him at sentencing for exercising his right to a trial by jury. We agree.

**{¶26}** A criminal defendant is guaranteed the right to a trial by jury and cannot be punished for exercising that right by refusing a plea offer. *State v. O'Dell*, 45 Ohio St.3d 140 (1989), paragraph two of the syllabus. Any increase in sentencing that is attributable to the defendant's decision to take the case to trial is improper. *State v. Morris*, 159 Ohio App.3d 775, 2005-Ohio-962, ¶ 12 (4th Dist.). Consequently, a trial court must avoid the appearance that a sentence has been enhanced because the defendant chose to take the case to trial. *State v.*

*Chapman*, 190 Ohio App.3d 528, 2010-Ohio-5924, ¶ 30 (9th Dist.), quoting *Morris* at ¶ 13. This Court has recognized that "[i]f a court makes statements from which it can be inferred that the sentence was increased due to a defendant's decision to proceed to trial, then that sentence must be vacated unless the record contains unequivocal evidence that the decision to proceed to trial was not considered when sentencing the defendant." *State v. Turner*, 9th Dist. Summit No. 27210, 2014-Ohio-4460, ¶ 23, citing *Chapman* at ¶ 30.

{¶27} In *Turner*, the defendant's attorney engaged in plea negotiations in chambers, and the State placed a plea offer on the record before trial. *Id*. at ¶ 23. When the defendant's attorney indicated that the defendant wanted to go to trial, the judge warned him that "[w]hen someone refuses to accept responsibility and if the jury convicts them, I take that into account[.]" *Id*. The judge then told the defendant that he would probably receive community control if he pleaded guilty, but would go to prison if he was convicted after trial. *Id*. After the jury returned a guilty verdict, the trial court reiterated the comments made during plea negotiations, "[n]oting that [the defendant] claimed to accept responsibility only after being convicted[.]" *Id*. at ¶ 24. This Court concluded that "[t]he trial judge's statements both before the trial and at the sentencing hearing created the appearance that she sentenced [the defendant] to prison, rather than community control, because he chose to proceed to trial rather than accept a plea offer." *Id*. at ¶ 25. In sustaining the defendant's assignment of error, we noted that there was nothing in the record to rebut the inference that the trial court increased the sentence because the defendant chose to proceed to trial. *Id*.

{¶28} In this case, the trial court initiated plea negotiations during the period of time when Mr. Tucker was represented by counsel. The trial court judge informed Mr. Tucker that the potential length of his sentence depended, in part, on the strength of the defense that he

presented, observing that "the stronger the defenses, the less likely you're going to get any kind of additional sanction because you tried the case." Although the judge then stated that he would not sanction a defendant for taking a case to trial, he reiterated that a defendant's sentence could reflect a weak defense undertaken after a rejected plea offer. Ultimately, the trial court informed Mr. Tucker that he was facing the potential for more than 50 years in prison after trial, but could receive a nine-year prison term if he accepted the court's plea offer. The trial court told Mr. Tucker that the arguments that he was making during pretrial appearances "get guys in prison for two times or three times or four times what they could have done[.]"

{¶29} Returning to these themes during sentencing, the trial court reiterated to Mr. Tucker that, "generally speaking, if you have a strong defense, this Court will never punish you for compelling the Court to proceed with a jury trial." Despite the fact that Mr. Tucker was virtually silent with regard to his political philosophy and participated substantively in the trial proceedings, the trial court stated that "We dealt with a person who was utilizing every effort * * * to ignore their responsibilities and their appreciation for their conduct in the past." The trial court noted the seriousness of the offenses that Mr. Tucker committed and emphasized that they were among the worst form of such offenses that he had seen. With equal emphasis, however, the trial court compared Mr. Tucker with a co-defendant who accepted a plea deal, noting that the other individual "did show up. And he handled it like a man." With respect to Mr. Tucker, in contrast, the trial court stated, "[T]he fact of the matter is that Mr. Tucker had an opportunity to significantly reduce the consequences of his actions. He didn't do so."

{¶30} Although the trial court emphasized the gravity of Mr. Tucker's conduct during sentencing, the balance of his comments create the inference that Mr. Tucker received a harsher sentence, at least in part, because he chose to take his case to trial. The record does not

"contain[] unequivocal evidence that the decision to proceed to trial was not considered." *Turner*, 2014-Ohio-4460, at ¶ 22. Indeed, as in *Turner*, the record is silent on this point. Accordingly, this Court must vacate Mr. Tucker's sentence and remand the matter for a new sentencing hearing.

**{¶31}** Mr. Tucker's first assignment of error is sustained.

III.

**{¶32}** Mr. Tucker's first assignment of error is sustained. His second, third, and fourth assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed in part and reversed in part, and Mr. Tucker's sentence is vacated consistent with our resolution of his first assignment of error. This matter is remanded to the trial court for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

ALLEN VENDER, Assistant State Public Defender, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.