**[Cite as *State v. Diamond*, 2025-Ohio-5084.]**

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF LORAIN | ) | | |

STATE OF OHIO

    Appellee

v.

RONALD DIAMOND

    Appellant

C.A. No.      23CA011955

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    21CR104689

DECISION AND JOURNAL ENTRY

Dated: November 10, 2025

---

HENSAL, Judge.

{¶1} In this reopened appeal, Ronald Diamond appeals from the judgment of the Lorain County Court of Common Pleas. This Court confirms its prior decision.

I.

{¶2} At around 1:00 a.m. one July evening, Mr. Diamond called 911 and told the dispatcher that "he had botched a murder/suicide." The victim was his wife of 38 years. Mr. Diamond shot her in the sternum, but she did not die immediately. When the police arrived, she was transported to the hospital. She remained in intensive care for several weeks before succumbing to her injuries.

{¶3} The police found several suicide notes throughout Mr. Diamond's house, confirming his plan to shoot himself and his wife. Mr. Diamond also admitted that he had purposely shot his wife. He indicated that he never told his wife he intended to shoot her that day.

{¶4}    A grand jury charged Mr. Diamond with aggravated murder, murder, two counts of felony murder, and two counts of felonious assault.  Each of his counts also carried a three-year firearm specification.  Mr. Diamond was arraigned and entered a not guilty plea.  Four weeks later, he withdrew his initial plea and expressed his desire to plead no contest to the indictment.  He signed a written plea, and the trial court conducted a plea hearing.  The court accepted his no contest plea.  At Mr. Diamond's request, the matter immediately proceeded to sentencing.

{¶5}    When Mr. Diamond addressed the court, he agreed that he and his wife had lost all their money and could no longer "afford medicine or anything."  He described how each of them suffered from significant, untreatable medical conditions involving chronic pain.  According to Mr. Diamond, his wife "made [him] agree to not let her suffer" and "[he] knew . . . she had reached the end."  The court ultimately sentenced him to life in prison without the possibility of parole.

{¶6}    Mr. Diamond did not immediately appeal the trial court's judgment, but he later moved for leave to file a delayed appeal.  This Court granted his motion.  In his appellate brief, he challenged his sentence on the singular basis that the trial court had improperly weighed the statutory sentencing factors.  We rejected his argument and affirmed the judgment of the trial court. *See State v. Diamond*, 2024-Ohio-195, ¶ 4-8 (9th Dist.).

{¶7}    Mr. Diamond moved to reopen his appeal due to ineffective assistance of appellate counsel.  We granted his application to reopen and appointed him new counsel.  *See State v. Diamond*, 9th Dist. Lorain No. 23CA011955 (Apr. 10, 2024).  In his reopened appeal, he raises three assignments of error for review.

3

II.

{¶8} We begin by outlining our standard of review in reopened appeals. "App.R. 26(B) establishes a two-stage procedure to adjudicate claims of ineffective assistance of appellate counsel." *State v. Leyh*, 2022-Ohio-292, ¶ 19. *Accord State v. Clark*, 2025-Ohio-4410, ¶ 18-19. "The first stage involves a threshold showing for obtaining permission to file new appellate briefs." *State v. Osborne*, 2022-Ohio-734, ¶ 6, quoting 1993 Staff Notes to App.R. 26. At that stage, "[t]he burden is on the applicant to demonstrate a 'genuine issue' as to whether there is a 'colorable claim' of ineffective assistance of appellate counsel." *Leyh* at ¶ 21, quoting *State v. Spivey*, 84 Ohio St.3d 24, 25 (1998). If the appellate court finds the applicant has satisfied his burden and grants the application to reopen, the matter "proceeds to the second stage, where '[t]he case is then treated as if it were an initial direct appeal, with briefs and oral argument.'" *State v. Calhoun*, 2022-Ohio-4269, ¶ 7 (9th Dist.), quoting *State v. Simpson*, 2020-Ohio-6719, ¶ 13.

{¶9} At the second stage, an applicant must establish "the merits of both the direct appeal and the claim of ineffective assistance of appellate counsel." *Leyh* at ¶ 25. "[T]he prior appellate judgment may not be altered unless the applicant establishes at the second stage that the direct appeal was meritorious and failed because appellate counsel rendered ineffective assistance under the two-pronged [*Strickland v. Washington*, 466 U.S. 668 (1984)] standard." *Id.* at ¶ 24. *Accord Clark* at ¶ 25.

ASSIGNMENT OF ERROR I

MR. DIAMOND WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 1, 10 & 16 OF THE OHIO STATE CONSTITUTION.

{¶10} In his first assignment of error, Mr. Diamond argues that he received ineffective assistance of appellate counsel because his attorney did not argue ineffective assistance of trial counsel. For the following reasons, we reject his argument.

{¶11} To prevail on a claim of ineffective assistance of counsel, Mr. Diamond must establish (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that but for his counsel's deficient performance the result of the trial would have been different. *Strickland*, 466 U.S. at 687. A deficient performance is one that falls below "an objective standard of reasonable representation . . . ." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). To establish prejudice, he must show that there existed "a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different." *State v. Sowell*, 2016-Ohio-8025, ¶ 138.

{¶12} Mr. Diamond argues that he was prejudiced by his trial counsel's failure to pursue a competency determination. He notes that he changed his plea less than a month after he was arraigned. In doing so, he spoke of chronic pain and his inability to continue sleeping on a steel bed at the jail. He notes that he did not appear to reap any benefit from his plea, as there was no reduction in charges or offer of a favorable sentencing recommendation. Moreover, he argues that it was "highly unlikely" his attorney had enough time to prepare his case in less than a month. According to Mr. Diamond, a competency determination would have served several purposes.

Specifically, it would have ensured he was in a fit state to enter a plea, given him more time to consider his charges, and given his attorney more time to investigate his case. He claims that he was prejudiced by his trial attorney's failure to secure a competency evaluation and his appellate counsel's failure to raise that issue on appeal.

{¶13} "Whether a defendant is competent depends on whether he 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *State v. Hough*, 2022-Ohio-4436, ¶ 21, quoting *State v. Were*, 2008-Ohio-2762, ¶ 45. "Incompetency must not be equated with mere mental or emotional instability . . . ." *State v. Bock*, 28 Ohio St.3d 108, 110 (1986). "A criminal defendant is presumed competent." *State v. Coker*, 2021-Ohio-2910, ¶ 8 (9th Dist.). "In general, a trial counsel's failure to seek a competency evaluation or to pursue an insanity defense is not, per se, ineffective assistance of counsel." *State v. Smith*, 2009-Ohio-1497, ¶ 10 (9th Dist.).

{¶14} As noted, Mr. Diamond expressed his desire to plead no contest less than four weeks after his arraignment. At that point, the State had already filed a bill of particulars and its response to Mr. Diamond's request for discovery. Defense counsel informed the court that he had reviewed discovery and had discussed with Mr. Diamond the consequences of entering a plea. They also discussed "the possibilities of things [he] could do if [Mr. Diamond] wanted to continue his case, such as putting in maybe NGRI pleas or discovery issues or bargaining . . . ." Moreover, defense counsel advised Mr. Diamond of his Criminal Rule 11 rights as well as his constitutional rights. Defense counsel told the court that, despite their discussions, Mr. Diamond wished to go forward with a plea.

{¶15} After listening to defense counsel, the trial court addressed Mr. Diamond. The court asked him whether he understood that it was unusual for the court to resolve such a serious case so quickly. Mr. Diamond indicated that he understood. The court then asked him whether he understood that, by expediting the process, he could be "compromising [his] attorney's ability to fully represent [him], by exploring other defenses, by talking further with the State of Ohio, [and] by looking into other potential issues that could perhaps be to [his] benefit[.]" Once again, Mr. Diamond indicated that he understood. Mr. Diamond informed the court that he was almost 73 years old, had a severely injured back, and could no longer tolerate his jail cell arrangements. He told the court:

> I've thought about this extensively. And I feel -- I can't have [my attorney] do his best, and I know he would, over the next two years. I feel prison would be the most humane for me.

Mr. Diamond also told the court that, after learning about the different types of pleas in the span of time since the shooting, he felt a no contest plea would benefit him the most physically and mentally. Mr. Diamond was able to answer any questions the court posed throughout the hearing and signaled that he understood each of his rights and the potential penalties that he faced.

{¶16} Upon review, Mr. Diamond has not demonstrated prejudice as a result of his appellate counsel's failure to argue ineffective assistance of trial counsel. Prejudice would exist only if there was a reasonable probability that a competency evaluation would have changed the result in this matter. *See State v. Lawson*, 2021-Ohio-3566, ¶ 104, quoting *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988). Mr. Diamond has not satisfied his burden in that regard. *See id.* The record reflects that he fully consulted with his trial counsel about his decision to enter a plea and understood the ramifications of doing so. He spoke lucidly, and no one expressed any doubts about his ability to understand the proceedings. *See Coker*, 2021-Ohio-2910, at ¶ 9 (9th

Dist.), quoting *State v. Tucker*, 2016-Ohio-1354, ¶ 8 (9th Dist.). Nor did anyone raise any concerns about his demeanor. *Id.* Both defense counsel and the trial court advised Mr. Diamond that entering a plea at such an early stage might hamper his counsel's ability to explore additional options for him. Mr. Diamond indicated that he understood. He stated that he knew his attorney would do his best if given the time, but he did not want to pursue that option. He was able to answer each of the court's questions and signal his understanding as to each of his rights. There was no indication that he lacked either a factual understanding of the proceedings or the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . ." *Hough*, 2022-Ohio-4436, at ¶ 21, quoting *Were*, 2008-Ohio-2762, at ¶ 45. Even if Mr. Diamond was distraught over the loss of his wife, that fact did not render him incompetent. *See Bock*, 28 Ohio St.3d at 110 ("Incompetency must not be equated with mere mental or emotional instability . . . ."). Mr. Diamond has not shown that he would have prevailed on direct appeal if his appellate counsel had raised an ineffective assistance of trial counsel argument on the foregoing grounds. *See Leyh*, 2022-Ohio-292, at ¶ 24-25. As such, his first assignment or error is overruled.

ASSIGNMENT OF ERROR II

THE APPELLATE COUNSEL NEGLECTED TO ARGUE THAT THE TRIAL COURT DID NOT ADHERE TO CRIM.R. 11 DURING MR. DIAMOND'S SENTENCING.

{¶17} In his second assignment of error, Mr. Diamond argues that he received ineffective assistance of appellate counsel because his attorney did not argue that, in accepting his plea, the trial court failed to comply with Criminal Rule 11(C)(2). We do not agree.

{¶18} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution."

*State v. Engle*, 74 Ohio St.3d 525, 527 (1996). In Ohio, the process for accepting pleas of guilty or no contest to felony charges is governed by Criminal Rule 11(C). *State v. Veney*, 2008-Ohio-5200, ¶ 8. Rule 11(C)(2) sets forth the colloquy that the trial court must engage in with the defendant. It requires, in part, that the trial court determine "that the defendant is making the plea voluntarily, with understanding of the nature of the charges . . . ." Crim.R. 11(C)(2)(a). This requirement of Rule 11(C) is not constitutional. *See State v. Dangler*, 2020-Ohio-2765, ¶ 14, citing *Veney* at ¶ 19 (identifying the constitutional requirements of Rule 11). *See also State v. Allen*, 2017-Ohio-2831, ¶ 10 (9th Dist.).

{¶19} When a trial court advises a defendant of the nonconstitutional requirements of Criminal Rule 11, "only substantial compliance . . . is required." *State v. McKnight*, 2023-Ohio-1933, ¶ 11 (9th Dist.). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). If a trial court fails to substantially comply with Criminal Rule 11 but at least partially complies with the rule, "the plea may be vacated only if the defendant demonstrates a prejudicial effect." *State v. Clark*, 2008-Ohio-3748, ¶ 32. The test for prejudice "is whether the plea would have otherwise been made." *Nero* at 108.

{¶20} The record reflects that Mr. Diamond signed a written plea. The written plea set out each of his charges, their code sections, and the potential penalties he faced for each charge. Mr. Diamond affirmed in the written plea that he understood the nature of the charges contained in his indictment. Moreover, at the plea hearing, defense counsel informed the court that he had reviewed the written plea with Mr. Diamond. Mr. Diamond confirmed that review and agreed that he had been given the opportunity to ask his counsel questions. When the court asked him whether he understood the nature of his six charges and the factual basis for each charge, Mr. Diamond

agreed that he did. The court reviewed the possible penalties for each charge, and Mr. Diamond said he understood.

{¶21} Before the trial court accepted Mr. Diamond's plea, the State summarized the facts upon which his plea was based. Those facts were as follows:

> [PROSECUTOR]: Your Honor, this happened on June 7th, 2021, after midnight. The 911 call's at approximately 1:00 a.m. And the Sheffield Village Police Department was responding to [the residence Mr. Diamond shared with his wife], thus establishing venue and jurisdiction.
>
> The call was from [Mr. Diamond] that he had botched a murder/suicide. When they arrived, they found the wife in bed. She had been shot just below the sternum, was bleeding, but she had lived at that time. The shooting, which would fall as the -- both the felonious assaults was done with a .38 that [Mr. Diamond] had purchased about a year prior to.
>
> Serious physical harm was caused that eventually does result in her death. And that [Mr. Diamond] indicated this was done purposely, due to financial problems, having lost about $3 million between 2008, real estate market, and the last [$]300,000 in the stock market, and that they were broke.
>
> He indicated he had not told his wife he intended to shoot her that day. There were several suicide notes throughout the house showing that he had planned to do this, leading [to] prior calculation and design.
>
> The wife lived, I believe, for about 21 days between being placed in an ICU unit and then hospice, where she expired as a result of the gunshot wounds.
>
> Based upon that, Your Honor, the State submits it would have been able to prove all six counts and the firearm specification, and would ask the Court to enter findings of guilty.

Mr. Diamond stipulated to the facts recited by the State. He gave no indication that he did not understand them or his charges. The record reflects that he held an advanced degree and had a career as a pharmacist. No one expressed concerns about his ability to process the information outlined for him or the questions asked of him.

{¶22} Mr. Diamond argues that the trial court failed to comply with Criminal Rule 11 when it accepted his plea because it did not explain his charges or clarify the facts of his plea.

According to Mr. Diamond, the court never explained that he was pleading to causing the death of his wife, with prior calculation and design. Nor did the court cite code sections for or review the specifics of his other charges. Mr. Diamond argues that the court failed to ask him if he was taking any medications or whether he was in too much pain to make an informed decision. Because the court did not consider his mental capacity and did not clearly explain the charges against him, Mr. Diamond argues, a challenge to his plea under Criminal Rule 11 would have succeeded if his appellate attorney had raised it on direct appeal.

{¶23} Mr. Diamond has not explained why his written plea, in conjunction with the State's recitation of the facts at the plea hearing, did not adequately inform him of the nature of his charges. *See* App.R. 16(A)(7). Even assuming the trial court did not substantially comply with its duties under Criminal Rule 11(C)(2), however, Mr. Diamond was only entitled to relief if he sustained prejudice. *See Clark*, 2008-Ohio-3748, at ¶ 32. Upon review, he has not shown that, had he possessed a better understanding of his charges, he would not have pleaded no contest. *See Allen*, 2017-Ohio-2831, at ¶ 14 (9th Dist.).

{¶24} As noted in our Discussion of Assignment of Error One, *supra*, the trial court questioned Mr. Diamond extensively about his decision to plead no contest. Mr. Diamond was adamant that he understood his rights and the penalties he faced but nevertheless wished to enter a plea. There was no dispute that he intentionally shot his wife. He stipulated to the fact that he planned to shoot her, used a .38 firearm to carry out that act, and caused her serious physical harm as well as death. The record reflects that Mr. Diamond received information about the nature of each of his charges from his counsel before the plea hearing. He was also present when the State recited the facts in support of his charges. A review of the record supports the conclusion that Mr. Diamond was well-spoken, informed, and responsive at the hearing. Any argument that further

discussion about the nature of his charges would have changed the result in this matter is wholly speculative. *See State v. Brown*, 2021-Ohio-2540, ¶ 13 (9th Dist.) (speculative claims insufficient to demonstrate prejudicial error). Mr. Diamond has not shown that, had his attorney raised this issue on direct appeal, the outcome of the proceedings would have been different. *See Leyh*, 2022-Ohio-292, at ¶ 24-25. Accordingly, his second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE APPELLATE COUNSEL NEGLECTED TO [ARGUE] THAT THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ACCEPTED MR. DIAMONDS' PLEA WHERE THE FACTS PRESENTED TO THE COURT NEGATED THE EXISTENCE OF OFFENSE.

**{¶25}** In his third assignment of error, Mr. Diamond argues that he received ineffective assistance of appellate counsel because his attorney did not argue that the trial court erred by accepting his plea to aggravated murder. According to Mr. Diamond, the trial court should have refused to accept the plea because the facts negated the element of prior calculation and design. For the following reasons, this Court rejects his argument.

**{¶26}** "[A] defendant may only plead no contest with the consent of the court." *State v. Tittle*, 2025-Ohio-596, ¶ 9 (9th Dist.). "If the court refuses to accept a plea of . . . no contest, the court shall enter a plea of not guilty on behalf of the defendant." Crim.R. 11(G). The decision "whether to accept a no contest plea lies within the sound discretion of the trial court." *State v. Iacovone*, 1997 WL 422771, *5 (9th Dist. July 16, 1997). "The court's decision will not be reversed absent an abuse of discretion." *State v. Beasley*, 2018-Ohio-16, ¶ 11. An abuse of discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶27}** After the State provided the trial court with a recitation of the facts in support of the charges, defense counsel indicated that he had no objection to the facts, but that Mr. Diamond

would address the matter more fully at sentencing. The prosecutor then stated that he believed the facts provided a basis for the findings, and Mr. Diamond interjected, "Somewhat." The court asked Mr. Diamond whether he wanted to add anything to the facts outlined by the prosecutor, and Mr. Diamond responded affirmatively. A discussion ensued. The court ultimately informed defense counsel that Mr. Diamond could choose whether he wanted to stipulate to the facts, but the court would not take a statement from him at that juncture. Defense counsel then conferred privately with Mr. Diamond. After doing so, defense counsel informed the court that Mr. Diamond would stipulate to the facts read by the prosecutor. The trial court accepted Mr. Diamond's plea based on those facts.

{¶28} After the court accepted Mr. Diamond's plea, the matter immediately proceeded to sentencing. The court listened to Mr. Diamond's son before hearing from defense counsel and Mr. Diamond. When Mr. Diamond spoke with the court, he explained that both he and his wife had suffered from chronic pain for many years. He explained how he was struck in a car accident and developed such bad back pain that even high-dose morphine stopped having an effect. Meanwhile, his wife suffered from a rare autoimmune disease that caused her to physically deteriorate and be largely unable to eat. He told the court that he and his wife only had each other, she did not want palliative care, and she made him promise he would not let her suffer. The trial court addressed Mr. Diamond and noted that it had been told the shooting stemmed from financial hardship. Mr. Diamond responded that was "partially" a reason for his actions because he and his wife had lost all of their money, he had already borrowed a significant sum to help with her treatments, and they could no longer "afford medicine or anything." Mr. Diamond indicated that the reason he shot his wife was because he knew she could not go on any longer in her condition.

{¶29} Mr. Diamond argues that the trial court erred when it accepted his no contest plea because the facts showed that he did not murder his wife with prior calculation and design. He notes that, when analyzing the element of prior calculation and design, the nature of the relationship between an accused and a victim is a key factor. *See State v. Walker*, 2016-Ohio-8295, ¶ 20, quoting *State v. Taylor*, 78 Ohio St.3d 15, 19 (1997) (instructing reviewing courts to consider whether the accused and victim had a strained relationship). He argues that all the facts he provided the court showed he and his wife loved each other. Because the facts did not support an aggravated murder charge, Mr. Diamond argues, the trial court abused its discretion when it accepted his no contest plea.

{¶30} Upon review, Mr. Diamond has not shown that the trial court went so far as to abuse its discretion when it accepted his plea. *See Beasley*, 2018-Ohio-16, at ¶ 11. Initially, we note that most of the facts Mr. Diamond cites in support of his argument were not before the trial court at the time it accepted his plea. Those facts emerged during sentencing. Mr. Diamond stipulated to the facts recited by the State at the time of his plea. He stipulated to the fact that he planned to shoot his wife and intentionally shot her that day. Even if the couples' financial status was not the impetus for the shooting, Mr. Diamond admitted it was a factor in that they could no longer "afford medicine or anything." He has not shown that, had his appellate counsel challenged the trial court's discretionary decision to accept his plea, the outcome of the proceedings would have been different. *See Leyh*, 2022-Ohio-292, at ¶ 24-25. Accordingly, his third assignment of error is overruled.

14

III.

{¶31} Mr. Diamond's assignments of error are overruled. Pursuant to Appellate Rule 26(B), this Court confirms its prior decision in this matter. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

STEVENSON, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶32} I respectfully dissent in regard to the first assignment of error regarding ineffective assistance of counsel. This case presents an uncommon and troubling set of procedural facts. Diamond was charged with a litany of very serious offenses, including aggravated murder. Just weeks after being arraigned, Diamond expressed a desire to plead no contest and proceed directly to sentencing. In addition to the disturbing circumstances surrounding the underlying incident, the record makes clear that Diamond was under a great deal of stress at the time he changed his plea. Diamond was experiencing chronic pain and being treated with powerful narcotics. Despite the gravity of the charges and the accelerated timeline, trial counsel did not request a continuance or push for a competency evaluation, which certainly would have been appropriate under the circumstances. Perhaps more significantly, trial counsel failed to challenge the State's statement of facts even though the State's narrative was inconsistent with Diamond's version of events. Under these circumstances, I would hold that appellate counsel's performance was deficient for failing to raise an ineffective assistance claim.


APPEARANCES:

YU MI KIM-REYNOLDS, Attorney at Law, for Appellant.

ANTHONY CILLO, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.